UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHARON LAVIGNE PERRILLOUX,                    CIVIL ACTION
INDIVIDUALLY AND ON BEHALF
OF HER MINOR CHILD, A.P.

VERSUS                                        NO: 21-1532

KUBOTA CORPORATION ET AL.                     SECTION: "J"(5)

## ORDER AND REASONS

Before the Court are a *Motion for Summary Judgment* **(Rec. Doc. 63)** filed by
Defendants Kubota Corporation ("KBT"), Kubota Tractor Corporation ("KTC"),
Kubota Manufacturing of America Corporation ("KMA"), and Kubota Industrial
Equipment Corporation ("KIE") and an opposition (Rec. Doc. 65) filed by Plaintiff
Sharon Lavigne Perrilloux, individually and on behalf of her minor child A.P., to
which Defendants have replied (Rec. Doc. 69). Having considered the motion, the
legal memoranda, the record, and the applicable law, the Court finds that the motion
should be **GRANTED IN PART AND DENIED IN PART**.

## FACTS AND PROCEDURAL BACKGROUND

This case arises from the unwitnessed death of Plaintiff Sharon Perrilloux's
husband, Michael Perrilloux, Jr., while he operated a Kubota compact excavator
rented from Home Depot. Plaintiff contends after the excavator "rocked" Mr.
Perrilloux was "thrown through the cab opening . . . causing his head to strike a
nearby pole", resulting in his death. (Rec. Doc. 1-2 at 4 ¶ 17). Alleging liability

through the Louisiana Products Liability Act ("LPLA"), Plaintiff brings her action against KBT, KTC, KMA, and KIE, asserting in her state court petition that the excavator was unreasonably dangerous in construction or composition, in design, because of inadequate warnings, and because of nonconformity to an express warranty. Her additional negligence claim against Home Depot USA, Inc. has since been settled between the parties. (Rec. Doc. 62).

Pursuant to federal diversity jurisdiction of 28 U.S.C. § 1332, Defendants timely removed the action. Kubota Defendants now move for summary judgment. Plaintiff, in part, opposes.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be

satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See*, *e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## <u>DISCUSSION</u>

The LPLA "provides the *exclusive* remedy for persons claiming injury due to product defects." *Willis v. Noble Drilling, Inc.,* 11-598 (La. App. 5 Cir. 11/13/12), 105 So. 3d 828, 842, n.35 (citing *Scott v. Am. Tobacco Co., Inc.,* 04-2095 (La. App. 4 Cir. 2/7/07), 949 So. 2d 1266, 1273) (emphasis added). To state a claim under the LPLA, a plaintiff must plead facts in support of each of the following elements of an LPLA claim: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. *See Ayo v. Triplex,*

*Inc.*, 457 F. App'x 382, 386 (5th Cir. 2012) (citing *Jack v. Alberto–Culver USA, Inc.*, 2006-1883, p. 4 (La. 2/22/07), 949 So. 2d 1256, 1258).

The manufacturer element removes certain Kubota Defendants from this action. At the outset of her opposition, Plaintiff concedes KBT alone is potentially liable under the LPLA, as it manufactured the Kubota U17 excavator. (Rec. Doc. 65 at 1 n.1). **Accordingly, KTC, KMA, and KIE are properly dismissed from this action.**

Plaintiff's opposition also narrows the LPLA grounds as to KBT, preserving only the design defect and failure to warn causes of action. (Rec. Doc. 65 at 1 ("Plaintiff offers this opposition and, for these reasons, requests that the motion be denied, except as to claims against defendants other than Kubota Corporation and as to any claim under La. R.S. 9:2800.55 (composition defect) or 9:2800.58 (express warranty).")). As a further concession, Plaintiff stipulates "that the conclusions reached by Defendants' biomechanics expert, Jennifer Yaek, and injury causation expert, Lars Reinhart, explain the mechanism of Michael Perrilloux's cause of death." (Rec. Doc. 65 at 2). Defendants summarize the conclusions of their experts:

> Mr. Perrilloux failed to raise the left-sided control lever lock to deactivate the excavator's controls before he intentionally and volitionally stood up inside the cab, leaned his head and neck outside the cab, and made contact with the left joystick control. In response to this control input, the excavator's cab rotated counterclockwise and trapped Mr. Perrilloux's lower face/upper neck between the [Roll-Over Protection System] and utility pole to result in his sustained fatal injuries.

(Rec. Doc. 69 at 8 (citing Rec. Doc. 65-8 at 31 (Report of Kubota's biomechanical expert, Lars Reinhart, M.D.))).

## I.    UNREASONABLY DANGEROUS DUE TO DESIGN DEFECT, LOUISIANA REVISED STATUTE § 9:2800.56.

The LPLA provides that "[a] product is unreasonably dangerous in design if, at the time the product left its manufacturer's control":

> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
>
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product.

La. Rev. Stat. § 9:2800.56. The design-defect inquiry is notoriously expert-driven. "Without expert or technical evidence to support the contention that the design was defective or to establish an alternative design" the plaintiff cannot create an issue of fact to be left to a jury. *Brown v. Home Depot USA, Inc.*, No. 14-545, 2016 WL 1583646, at *3 n.32 (M.D. La. Apr. 19, 2016) (citing *McCarthy v. Danek Med., Inc.*, 65 F. Supp. 2d 410, 412 (E.D. La. 1999)). The alternative design must "be reasonably specific and not based on mere speculation." *Gray v. Indus. Plant Maint.*, 2004 WL 1661209, at *5 (E.D. La. 2004). Moreover, a "mere concept doesn't qualify as an alternative design under the LPLA in the absence of technical drawings, calculations, scientific study, photographs, or the publication of any engineering principles as to *this proposed alternative design*". *Vallee v. Crown Equip. Corp.*, No. 22-30053, 2023 WL 2964407, at *1–2 (5th Cir. Apr. 14, 2023) (emphasis added, quotation cleaned up) (quoting *Seither v. Winnebago Indus., Inc.*, 853 So. 2d 37, 41 (La. App. 4th Cir. 2003)).

Parties debate whether an alternative design has been proposed. To address the unintended manipulation of the excavator's controls by a standing operator,

5

Plaintiff's expert Christopher Ferrone proposes a "safety suite," which would provide an interlocking "occupant presence sensing" system to automatically disable the excavator controls based on seat switches, restraint bars, interlocking seatbelts, and finger triggers or joystick flaps. Ferrone references patents for each portion of the safety suite, all predating the manufacturing of the U17 excavator. Moreover, Ferrone lists around forty patents he reviewed for the purposes of his expert report and recommends twenty within four categories related to "the issue(s) of machine lockout, operator restraint, operator presence sensing and prevention of in [sic] advertent control activation." (Rec. Doc. 63-10 at 5–6, 12–13). In summary of his technical review, Ferrone opines, "Various patents referenced in this report will accomplish this design goal in addition to using this already existing technology." (Rec. Doc. 63-10 at 28).

Parties agree that no other compact excavator manufacturer has incorporated any of the "occupant presence sensing" concepts into its machines. Nonetheless, in his deposition testimony, Ferrone states "all of those devices are in place currently in numerous types of construction equipment which are not being terminated by the manufacturer because of poor response from the user base." (Rec. Doc. 63-11 at 102). Plaintiff highlights three patents with design descriptions that she contends would apply to a compact excavator, such as an interlock control system for "lawn tractors, skid steer loaders, integrated tool carriers, material handling machines, backhoe loaders and the like." (Rec. Doc. 65 at 15–16). Plaintiff also includes as an exhibit— though unreferenced in her opposition—three, single-snapshot interlock schematics

from different patents Ferrone reviewed. (Rec. Doc. 65-17; *see also* Rec. Doc. 63-10 at 5–6, 12–13). In rendering his opinion, Ferrone inspected a U17 excavator and its design schematics. (Rec. Doc. 63-10 at 9–11). He concluded his "safety suite" could be feasibly integrated into the current machine: "One way for the proposed operator restraint bar, interlocking seatbelt or seat switch to be integrated into the present machine design logic is within the electrical diagram of the U-17 Workshop Manual (p. 658)." (Rec. Doc. 63-10 at 11 (citing Rec. Doc. 65-10)).

Nonetheless, Ferrone does not submit a prototype schematic for the excavator at issue. Neither did Ferrone test his proposed "safety suite" on a U17 excavator. (*See* Rec. Doc. 63-11 at 117). Nor could he point to its use in any other compact excavator. Defendants argue these omissions keep Plaintiff from producing a feasible alternative design, as Ferrone did not show how the "safety suite" would apply to the U17 excavator.

Defendants overstate Plaintiff's alternative design burden. As the first design-defect element, a plaintiff must show "[t]here *existed* an alternative design for the product that was capable of preventing the claimant's damage." La. Rev. Stat. § 9:2800.56 (emphasis added). Louisiana courts have interpreted this alternative design "existence" to mean "the manufacturer has a realistic choice" as to the proposed design. *McFarlin v. New Hampshire Ins. Co.*, No. 12-3033, 2016 WL 3645200, at *5 (W.D. La. June 30, 2016) (quotation and citation omitted). Relying on civilian scholarship on the topic, Judge Morgan provided thorough treatment of the term:

"Existed" does not mean that the alternative design must have been manufactured and in actual use when the manufacturer distributed his product. Nor does it mean that that alternative design must have been feasible, i.e., could have been employed even if it was not, at that time. But "existed" does mean that the alternative design must have at least been conceived at the time the product left its manufacturer's control, because one of the purposes of the first element of section 2800.56 (when read with section 2800.59(A)) . . . is to show that the manufacturer had a realistic choice as to design).

*Moyer v. Siemens Vai Servs., LLC*, No. 11-3185, 2013 WL 3293668, at *9 (E.D. La. June 28, 2013) (quoting John Kennedy, *A Primer on the Louisiana Products Liability Act,* 49 LA. L. REV. 565, 596 (1989)). Thus, although no compact excavator contains the "safety suite" components, the industry practice does not thereby prove the "inexistence" of the proposed alternative design. Instead, the first design-defect element demands inquiry of whether the alternative design was a realistic choice. Where considering the application of one component in a different setting, courts should consider the degree the technology would need to be altered in the new setting. *See Thompson v. Nissan N. Am., Inc.*, 429 F. Supp. 2d 759, 767–68 (E.D. La. 2006), *aff'd*, 230 F. App'x 443 (5th Cir. 2007) (finding an unrealistic choice gas valves in a racing car model that required removal and remounting of gas tank and "obliterat[ing]" other gas tank components). Here, the proposed "safety suite" appears apt for use in another construction machinery context, without need of significant alterations. At a minimum, the Court determines there is a genuine issue of material fact on the issue.

Ferrone has taken technical, patented safety solutions, overlayed them on the U17 excavator's circuitry schematics, and produced a realistic alternative design.

8

Relying on her expert's conclusions, Plaintiff further avers that because the U17 excavator "already supports one switch (the control lever lock)" the existing circuitry can support the additional components. (Rec. Doc. 65 at 12). Plaintiff also supplies in her opposition the proposed locations of "safety suite" components:

- The seat switch fits under the operator's seat.
- The restraint bar replaces the existing hydraulic lever lock, which currently relies on manual activation.
- The seatbelt sensing is integrated into the seatbelt buckle.
- The barrier guard or hand sensing is part of the control lever assembly.

(Rec. Doc. 65 at 12).

Ferrone's proposal, thus, is distinguishable from Defendants' caselaw authorities. In the heavily cited *Vallee v. Crown Equip. Corp. of Ohio*, Judge Vance considered a design-defect claim from a forklift operator whose leg was crushed in a collision with a pole. *Vallee v. Crown Equip. Corp. of Ohio*, No. 20-1571, 2022 WL 179532, at *1 (E.D. La. Jan. 20, 2022), *aff'd sub nom. Vallee v. Crown Equip. Corp.*, No. 22-30053, 2023 WL 2964407 (5th Cir. Apr. 14, 2023). The forklift was door-less, leading the plaintiff to contend the addition of doors would have prevented the injury. However, the plaintiff's expert only presented photographs of doors on competitors' forklifts, with each option explained with "a one-sentence description and nothing further." *Id.* at *6. No technical drawings were presented, no suitable door material proposed, no preferred locking mechanism explained. *Id.* Moreover, the plaintiff's expert was silent on the risk-utility of the various proposals. *Id.* Another proposed forklift modifications—a foot-pedal braking system redesign—similarly was found insufficient for a failure to provide technical drawings or statistics of improved safety

9

in a so-equipped forklift of a competitor. *Id.* at *8–9. The district court concluded the design-defect claim failed because the alternative designs were "mere concepts." *Id.* at *10 ("[B]ecause plaintiff's experts have not articulated a specific alternative design, [their] contentions are unmoored to any concrete reference points. The mere concept of a 'door,' with unknown qualities, is not susceptible to the cost-benefit analysis that the jury in this case would be tasked with performing.").

In affirming the grant of summary judgment, the Fifth Circuit agreed the design-defect proposals needed "more detail." The appellate court emphasized the need for "technical drawings or calculations." *Vallee v. Crown Equip. Corp.*, No. 22-30053, 2023 WL 2964407, at *2 (5th Cir. Apr. 14, 2023) (quotation cleaned up) (quoting *Seither v. Winnebago Indus., Inc.*, 853 So. 2d 37, 41 (La. App. 4th Cir. 2003)). However, the Fifth Circuit clarified that its holding was not based on the plaintiff's use of multiple proposals, rather than a singular one: "Louisiana law allows plaintiffs to proffer multiple alternative designs." *Id.* at *3 (citing *Johnson v. Black & Decker U.S., Inc.*, 701 So. 2d 1360, 1367 (La. App. 2d Cir. 1997)).

Here, Plaintiff does not present pictures of doors or diagram arrows for the new placement of foot-pedals. Instead, after testing a U17 excavator and reviewing electronic circuitry, Ferrone supplies technical, patented drawings for each of his "safety suite" additions. Thus, the alternative design far exceeds those that Louisiana courts have found lacking. *See, e.g., Tassin v. Sears, Roebuck & Co.*, 946 F. Supp. 1241 (M.D. La. 1996) (purchase of a device from a catalog, without technical schematics or testing, as proposed alternative design for table saw); *Gray v. Indus. Plant Maint.*,

10

No. 01-1167, 2004 WL 1661209 (E.D. La. July 23, 2004) (generic description of cut-off switch for lawn tractor engine); *Seither v. Winnebago Indus., Inc.*, 2002-2091 (La. App. 4 Cir. 7/2/03), 853 So. 2d 37 (proposed crash-worthy truck doors without technical review or testing); *Scordill v. Louisville Ladder Grp., LLC*, No. 02-2565, 2003 WL 22427981 (E.D. La. Oct. 24, 2003) (proposed heavy-duty ladder supported by pictures of other models and no analysis of how tall or strong the additions would have to have been to prevent plaintiff's accident). Plaintiff does not bring into court a prototype, but neither does he throw out a "mere concept" of a safety measures. An alternative design sufficient to survive summary judgment is presented. Had any or all of the proposed "occupant presence sensing" controls been integrated into the U17, Mr. Perrilloux would have been unable to manipulate controls after "he intentionally and volitionally stood up inside the cab[.]" (Rec. Doc. 65-8 at 31 (stipulated accident facts)). Thus, the excavator's cab could not have "rotated counterclockwise and trapped Mr. Perrilloux's lower face/upper neck between the [Roll-Over Protection System] and utility pole to result in his sustained fatal injuries." (Rec. Doc. 65-8 at 31). The proposed technical, patented alternative design components would have prevented the injury in question.

And the risk-utility of at least portions of the "safety suite" also supports the Court's refusal to grant summary judgment on the design-defect issue. The proposals add switches to the existent circuitry. As the Fifth Circuit has counseled, "there may be cases in which the judge or the jury, by relying on background knowledge and 'common sense,' can 'fill in the gaps' in the plaintiff's case, estimating the extent of

the risk avoided, the costs of implementing the proposed design change, or the adverse effects of the design modification on the utility of the machine." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 184 (5th Cir. 1990). The Court finds the proposals to be "relatively uncomplicated, and the implications of the change in design must be such that a layman could readily grasp them." *Johnson v. T.L. James & Co.*, 2000-1365 (La. App. 1 Cir. 9/28/01), 809 So. 2d 287, 292; *see also McDaniel v. Terex USA, L.L.C.*, 466 F. App'x 365, 377 (5th Cir. 2012) (citation omitted). In sum, the design-defect issue is appropriate for jury consideration.

## II. UNREASONABLY DANGEROUS BECAUSE OF INADEQUATE WARNING, LOUISIANA REVISED STATUTE § 9:2800.57.

However, Plaintiff's additional warning claim is more tenuous. As to inadequate warnings, the LPLA provides

> A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

La. Rev. Stat. § 9:2800.57. An adequate warning, in turn, "means a warning or instruction that would lead an ordinary reasonable user or handler of a product to contemplate the danger in using or handling the product and either to decline to use or handle the product or, if possible, to use or handle the product in such a manner as to avoid the damage for which the claim is made." La. Rev. Stat. § 9:2800.53(9). As with other LPLA claims, the inadequate warning must be the proximate cause of the injury. *See* La. Rev. Stat. § 9:2800.54. Put another way, the plaintiff must prove "that

'but for' the inadequate warning, the accident in question would not have occurred." *Fernandez v. Tamko Bldg. Prod., Inc.*, 2 F. Supp. 3d 854, 860 (M.D. La. Apr. 11, 2014), *aff'd*, 588 F. App'x 394 (5th Cir. 2014) (citing *Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 311 (5th Cir. 1990)). Although often a question deferred at the summary judgment stage, the Fifth Circuit "has previously rejected the notion that a claim of inadequate warning always presents a jury issue." *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 264 (5th Cir. 2002) (citing *Anderson v. McNeilab, Inc.*, 831 F.2d 92, 93 (5th Cir.1987)).

Plaintiff cites various passages within the U17 excavator manual as containing inadequate warnings. Specifically, Plaintiff's expert stresses the absence of "consequence statements." Although the manual indicates an operator should always use a seatbelt, Plaintiff contends it is silent on the potential harm that could be caused when an seatbelt-less operator moves in the cabin while controls are active. Plaintiff also reads warnings against leaning out of the cabin and leaving the excavator unattended while the engine is running to not sufficiently warn of the consequences from the continued functionality of the control system.

The adequacy of these warnings could present a genuine issue if not for a key factor: there is no indication that Mr. Perrilloux ever saw or read the operator's manual. Plaintiff leaves the contention unaddressed in her briefing before the Court. In response to Defendants' Statement of Material Facts that there is "[n]o evidence in this case shows or even suggests that Perrilloux ever read or even looked at the Operator's Manual[,]" (Rec. Doc. 63-2 at 8), Plaintiff is conclusory: "Denied and

contested as there also does not exist any evidence that he did not read or look at the Operator's Manual." (Rec. Doc. 63-2 at 3). In her deposition testimony, Plaintiff stated she did not think Mr. Perrilloux received the operator's manual and did not know if he would have read it as his normal practice before operating such machinery. (Rec. Doc. 63-13 at 49, 57).

Here, it is Plaintiff's burden to prove that but-for manual warnings without consequence statements Mr. Perrilloux's injury would not have occurred. Plaintiff, however, has not shown Mr. Perrilloux was aware of, much less read, the published warnings. Although all reasonable inferences are drawn in Plaintiff's favor, she cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Put simply, proximate causation from inadequate warnings cannot be shown where there is no review of existent warnings. Plaintiff cannot succeed on her LPLA inadequate-warning claim.

## <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendants Kubota Corporation, Kubota Tractor Corporation, Kubota Manufacturing of America Corporation, and Kubota Industrial Equipment Corporation's *Motion for Summary Judgment* **(Rec. Doc. 63)** is **GRANTED IN PART**. Claims against Defendants Kubota Tractor Corporation, Kubota Manufacturing of America Corporation, and Kubota Industrial Equipment Corporation are **DISMISSED with prejudice**. Further, claims against all Defendants under the theories of "construction or composition," inadequate warning,

14

and breach of express warranty are **DISMISSED with prejudice**. In all other respects, Defendants' motion is **DENIED**.

New Orleans, Louisiana, this 30th day of September, 2024.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE